STATE OF MAINE                              MAINE SUPERIOR COURT
AROOSTOOK, SS.

                                                CIVIL ACTION
                                       DOCKET NO:  HOUSC-RE-19-05


FEDERAL NATIONAL MORTGAGE
ASSOCIATION
                    Plaintiff
                                                DETAILED
                                                FINDINGS, DECISION
                                                AND ORDER
                                                REGARDING
                                                PLAINTIFF'S COMPLAINT
                                                FOR FORECLOSURE


        VS.

REBEKAH BICKFOR and
RANDY BICKFORD
                    Defendants


               TITLE TO REAL ESTATE IS INVOLVED
        (147 Military Street, Houlton, Maine; SDARD Bk. 4101, p. 155)


On or about February 21, 2019, Federal National Mortgage Association, (hereafter FNMA) filed

a civil complaint against Rebekah Bickford and Randy Bickford (hereafter Defendants) seeking

foreclosure of mortgage pursuant to 14 M.R.S. §6322 regarding property at 147 Military Street,

Houlton Maine. Defendants timely filed an answer to the complaint. A bench trial on FNMA's

Complaint for Foreclosure  was held December 16, 2019.


At trial FNMA proffered Rosemary Martin of JPMorganChase and Mason Segers of Bayview

Loan Servicing as its witness qualified to testify about the business records of the various entities

1

involved.[1] M.R.Evid.803(6); *Beneficial Maine v. Carter,* 2011 ME 77, *Key Bank Nat'l Ass'n v. Estate of Quint,* 2017 ME 237. [2] The Defendants also testified. At trial the following exhibits were admitted:

A. Copy of Promissory Note dated March 24, 2005 from Defendants to First Horizon Home Loan Corporation[3].;

B. Mortgage from Defendants to First Horizon Home Loan Corporation regarding property at 147 Military Street, Houlton, Maine and recorded at SDARD Bk. 4101, p. 155;

C. Quitclaim Assignment of Mortgage dated August 3, 2018 and recorded at SDARD Bk. 5811, p. 163 from First Horizon Home Loan Corporation to Federal National Mortgage Association regarding the aforesaid mortgage recorded at SDARD Bk. 4101, p. 155[4];

D. Notice of Right to Cure issued to the Defendants, dated January 4, 2019, prepared by Bendett & McHugh, as counsel for FNMA (the Notice is attached to Ex. D as Ex. 1 of the Affidavit of Santo Longo, Esq.;

---

[1] FNMA also had Ed Hynes available to testify on behalf of First Horizon Home Loans and MetLife for the period from the origination of the loan until the loan was transferred to Chase, but during trial the parties stipulated the business records for the servicing period by First Horizon Home Loans and MetLife, Ex. E, could be admitted without witness testimony.

[2] Based on their respective experience and training with the entity each of them are employed by, and their direct knowledge, training and experience with the operations, and regular business practices of each respective entity, the Court finds Ms. Martin and Mr. Seger each to be a qualified witness to testify to the business practices and record keeping of JPMorganChase and Bayview Loan Servicing, respectively. See Section 2. Breach *infra* for the Court's detailed findings.

[3] The original Promissory Note was provided at trial for inspection and by agreement was retained by the Bank.

[4] Also admitted with Ex. C are several additional assignments assigning the "MERS" interest, starting with an assignment from MERS to MetLife Home Loans, then MetLife to JP Morgan Chase Bank, then JPMorgan Chase Bank to Bayview Loan Servicing, and finally Bayview Loan Servicing to Federal National Mortgage Association. Included with these assignments is a copy of a Limited Power of Attorney. The court finds these assignments included in Ex. C properly assign the "MERS" interest, but that the issue is moot as the mortgage interest was effectively assigned by the Quitclaim Assignment from First Horizon.

2

E. Payment history for the period the loan was serviced by First Horizon and MetLife Home Loans, from the origination of the loan through 2012;

F. Payment history for the period the loan was serviced by JPMorgan Chase until July, 2017;

G. Payment history for the period the loan was serviced by Bayview Loan Servicing from July, 2017 through to date;

H. Judgment figures as of 12/16/19, also including Corporate Advance Details;

I. Military Affidavit;

J. Affidavit Concerning Attorney's Fees; and

K. Proof of Service on the Defendants.

Also admitted into evidence were the following Defense Exhibits:

D. Ex. 5- Letter from Bayview to Defendants dated October 14, 2019 regarding assignee information;

D. Ex. 6-Corporate Advance Details from July, 2017 to date;

D. Ex. 7- Mortgage Loan Statement from Bayview dated November 18, 2019;

D. Ex. 8- Letter from Bendett & McHugh dated November 22, 2019 regarding sums to terminate foreclosure and reinstate; and

D. Ex. 9- "days between two dates" calculator.

## DISCUSSION

For a judgment of foreclosure to be granted, there are eight required elements:

> • the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any;
>
> • properly presented proof of ownership of the mortgage note and [evidence of the mortgage note and] the mortgage, including all assignments and endorsements of the note and the mortgage;
>
> • a breach of condition in the mortgage;
>
> • the amount due on the mortgage note, including any reasonable attorney fees and court costs;
>
> • the order of priority and any amounts that may be due to other parties in interest, including any public utility easements;
>
> • evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements;
>
> • after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules; and
>
> • if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act.

*Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶11.

1.Ownership and Existence of Note and Mortgage

In this case, FNMA has properly presented proof of its actual possession and ownership of the promissory note, and the existence of a mortgage. (See Ex. A, B and C; *Bank of America, N.A. v. Greenleaf,* 2014 ME 89, ¶21). FNMA is in actual possession of the original promissory note which has been endorsed in blank. (Ex. A) And the mortgage has been properly assigned to FNMA. (See Exhibits B and C).

2.Breach

Whether there was a breach of the note and mortgage requires a review of the payment histories. In this case, the note and mortgage were owned or serviced by three entities- first First Horizon, which became MetLife, then JPMorgan Chase, and lastly by Bayview Loan Servicing on behalf of FNMA. FNMA proffered two witnesses to testify to the payment history and management of the note and mortgage when under the servicing of JPMorgan Chase and Bayview[5]. This includes the period when the loan went into default.

The Law Court has provided guidance for the admissibility of records pursuant to the Business Record Exception. A witness may lay a proper foundation to admit integrated business records if the witness's testimony satisfies the requirements of both M.R. Evid. 803(6) and *Beneficial Me.*

---

[5] The payment history for the period when the loan was serviced by the originator, First Horizon and by Met Life, from origination of the loan through 2012 was admitted by agreement without the need for a live witness. See Ex. E.

*Inc. v. Carter*, 2011 ME 77. *Key Bank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237, ¶ 16.

Business records are admissible pursuant to M.R.Evid. 803(6) if:

> (A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) Making the record was a regular practice of that activity;
>
> (D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and
>
> (E) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness. *Id.* at ¶14.

> A qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his knowledge. The qualified witness "need not be an employee of the record's creator." For example, "if the records [from the producing business] were received and integrated into another business's records and were relied upon in that business's day-to-day operations, an employee of the receiving business may be a qualified witness. In such instances, the business records will be admissible "if the foundational evidence from the receiving entity's employee is adequate to demonstrate that the employee had sufficient knowledge of *both businesses'* regular practices to demonstrate the reliability and trustworthiness of the information. *Id.* at ¶15.

The records are admissible pursuant to *Carter* if:

> • the producer of the record at issue employed regular business practices for creating and maintaining the records that were sufficiently accepted by the receiving business to allow reliance on the records by the receiving business;
>
> • the producer of the record at issue employed regular business practices for transmitting them to the receiving business;

6

• by manual or electronic processes, the receiving business integrated the records into its own records and maintained them through regular business processes;

• the record at issue was, in fact, among the receiving business's own records; and

• the receiving business relied on these records in its day-to-day operations. *Id.* at ¶ 16.

The court will now discuss the business records and payment history while the note and mortgage were serviced by the two entities referenced above.

*JPMorgan Chase*

Rosemary Martin testified on behalf of JPMorgan Chase regarding their period of ownership or servicing of the loan. Based upon her training, experience and knowledge of the operations of JPMorgan Chase, the court finds Ms. Martin is a qualified witness to testify to the business records of JPMorgan Chase. And based upon her testimony that the Chase Payment History was a record made at the time of the transaction by a person with knowledge, was kept in the regular course of business, and was trustworthy, the Chase Payment History, Ex. F, is admitted. The evidence shows that Chase serviced the loan from 2013 through July, 2017, and was then assigned to Bayview.

The Chase records show that for the several years leading up to 2016, payments were regularly made, although often late, resulting in the appropriate principal reduction and application to interest and other escrow items. But in 2016 the payment history shows the Defendants became more routinely late in making the monthly payment, and fell behind by a month or more. For example, the February 1, 2016 payment was not made until April 18, 2016; the May 1, 2016 payment not made until July 6, 2016; and the June payment not made until August 18, 2016. See

7

Ex. F, lines 263, 273, 277. On January 21, 2017 the Defendants made the payment due for November 1, 2016. See Ex. F, line 299. That is the last payment made by the Defendants.

On July 1, 2017, Chase transferred the loan to Bayview, when the mortgage principal balance was $40, 815. 07. See Ex. F, line 317.

*Bayview Loan Servicing*

Mason Segers testified on behalf of Bayview Loan Servicing which serviced the loan on behalf of FNMA. Based upon his training, experience and knowledge of the operations of Bayview Loan Servicing, the court finds Mr. Segers is a qualified witness to testify to the business records of Bayview. Mr. Segers testified that the Bayview Payment History was a record made at the time of the transaction by a person with knowledge, was kept in the regular course of business, and had otherwise been found to be trustworthy. In addition, Mr. Segers provided testimony to the procedure of receiving, in-boarding, and maintaining the records from Chase. Accordingly, the court admits in evidence the Bayview Loan Servicing Payment History, Exhibit G.

The Bayview Payment History shows that the principal balance of the loan was $40,815.07 when it was acquired in July, 2017; this is the same figure that Chase shows for a balance when transferred. (See Exhibits G and F). After the loan was transferred to Bayview, the Defendants made no additional payments. But on November 6, 2017 funds were applied from escrow towards the principal, reducing the principal balance to $40, 718.85. See Ex. G. That remains the principal balance owed to date.

In summary, the court finds all of the payment histories to be reliable and accurate. The Defendants owe for the December 1, 2016 payment, and have not made a payment since January 2017, which was for the November 1, 2016 payment. The principal balance owed is $40,718.85.

3. Amount Due

As previously discussed, all three Payment Histories are found trustworthy and reliable, and are admitted in evidence. And as previously discussed, the Defendant has paid only through November, 2016. The principal loan balance is $40,718.85. Based upon the testimony of Mason Segers, and review of the Chase and Bayview payment histories (Ex. F and G) and Judgment Figures (Ex. H) which are also found reliable and admitted, the court finds that FNMA has proven that the following amounts are due (See Ex. H for summary and tables):

Principal- $40,718.85

Interest- $8,048.93

Escrow Advances- $2,908.22

Inspections- $451.00

Suspense Balance- ($343.94)

In addition, the court accepts the attorney fee affidavit of FNMA's counsel, Andrew Schaefer, Esq. and finds that the fees itemized in the affidavit totaling $8,520.00 and costs totaling $882.57 are due. See Ex. J. The total amount due on the note and mortgage is $61,185.63.

4. Order of Priority and Amount Due Other Parties

N/A- there are no parties in interest.

9

5.Notice of Default

The Notice of Right to Cure dated January 4, 2019, was prepared by Bendett & McHugh as counsel for FNMA. See Ex. G. Prior to trial FNMA filed a Motion in Limine to have the Notice admitted into evidence as a business record. The court previously ruled that the Notice was admissible without a live witness from the law firm of Bendett & McHugh to authenticate the document and testify it was prepared as a business record in the usual course of business, but that Defendant retained all rights regarding the accuracy of the Notice and its compliance with §6111. See Order dated September 18, 2019. Indeed, FNMA must still establish that the Notice complies with §6111.

Upon review of the Notice, the court finds it was sent with a certificate of mailing to the Defendants to the property address of 147 Military Street, Houlton. The court further finds the content of the notice complies with 14 M.R.S. § 6111. The Notice provides the 35 day notice required by sub-section 1, it contains the information required under section 1-A, and it was issued in the manner required by sub-section 3(B), by first class mail with a certificate of mailing. 14 M.R.S. §6111(1), (1-A), (3).

Defendant objected that the Notice did not properly itemize amounts due, including attorney fees, and that the Notice failed to provide contact information for a "person" having authority to discuss modification. These objections are unavailing. The Notice properly itemizes the total payments due, attorney's fees, inspection fees, title report fees, the certificate of mailing, and a credit for suspense. The Notice also provided the address and phone number of Bayview Loan

Servicing for the Defendant to contact with questions, requests for mediation or options for avoiding foreclosure. The court does not agree with Defendants' argument that the Notice must provide an identity of an actual individual, and finds the Notice complies with §6111(1-A)(E, F and G). Also, Defendants' argument that the phone number provided in the Notice is not a working number is also unavailing. As demonstrated during trial, upon dialing the number provided in the Notice, the call was answered by an individual who identified themselves as Bayview Loan Servicing.

In summary, the court finds the Notice complies with §6111 and Plaintiff's Ex. G is admitted into evidence, over Defendant's objection, and finds the Notice to be in compliance with §6111.

6.Mediation

Mediation was not held as Defendants waived it by Motion dated April 8, 2019.

7. Military Service

The Defendants appeared for trial, although evidence was also introduced that the Defendant is not in military service.

8. Analysis per *M&T Bank v. Plaisted*

Defendant also argues[6] that Nationstar's evidence does not comply with the requirements set forth by the Law Court in *M&T Bank v. Plaisted*, 2018 ME 121. Defendant generally argues that FNMA failed to comply with the following requirements set forth in *Plaisted*:

---

[6] Although counsel for Defendants did not specifically argue at trial non-compliance with

11

In a foreclosure action, the party seeking a judgment of foreclosure should present testimony and documentary evidence establishing, with specificity, how that party calculated the total amount owed on the note, which in most cases will require a demonstration of the loan payment history, an itemized list of other charged amounts, and an indication of changes in the sums due on the loan. Regarding the loan payment history, a party seeking a judgment of foreclosure should submit evidence identifying the following information: the original amount of the loan; the date the debt was incurred; the schedule and due dates for payments; the dates and amounts of each payment, including any payments made after default; the dates and amounts of each charge assessed (interest, escrow payments, costs, fees, and other charges); the balance due on the note after each payment and charge assessed; the date of the last payment before default; the total amount paid by the mortgagor; and, if the loan was serviced by more than one loan servicer, the time during which each servicer was responsible for collecting and recording loan payments and charges. Preferably, this information should be presented in chronological order. *Plaisted*, ¶ *28, 29.*

In this case, FNMA presented qualified witnesses to present the loan servicing and payment history for the entities that owned or serviced the loan, including Chase and Bayview. It presented this evidence in chronological order. The payment histories properly transferred ending balances from one entity to beginning balances with the subsequent entity. The payment histories were found to be reliable. The court does not agree with Defendant that each separate payment history must contain *all* of the information required by *Plaisted,* but rather that within the collective information provided by all of the documentation the *Plaisted* requirements are satisfied. From the payment histories and other documentation introduced, the original debt, date of the loan, date of default and last payment are all clearly indicated, as previously discussed. The note and other documents show that the payments were due on the first of each month. The three payment histories show when every payment was made, and how each payment was credited, including interest, principal, and escrows. And the three payment histories show all

---

*Plaisted,* counsel asserted during all pretrial conferences that the defense included the issues raised in *Plaisted.*

disbursements made. Finally, the payment history of Chase shows the last payment being made by Defendants on January 21, 2017, which was for the November 1, 2016 payment. After that payment the principal balance was $40,815.07. The only other credit for the principal came from the escrows when funds were applied in November 6, 2017 reducing the balance to $40,718.85 The court finds that within the evidence admitted, FNMA has provided all of the information required by *Plaisted*.

The Court therefore finds that FNMA has established by a preponderance of the evidence that it is entitled to Judgment of Foreclosure and Sale. Judgement of Foreclosure and Sale shall be issued pursuant to the proposed judgment provided by Plaintiff, and that these findings, decision and order shall be incorporated therein. Pursuant to Rule 79(a) this order shall be incorporated by reference in the Civil Docket.

Dated: January 6, 2019

_____
Justice, Superior Court